COOK v. AMERICAN EXCHANGE BANK.

(Filed October 22, 1901.)

1. APPEARANCES—*Voluntary Appearance—Service of Process—Waiver—Stipulations—Trial.*

A stipulation giving defendants extension of time in which to take any action they could have taken at the return term amounts to a voluntary appearance.

2. TRESPASS—*Conversion—Trustee—Creditors.*

Where a trustee holds possession of property for the benefit of creditors, and the trustee and creditors permit a conversion of the property, they are liable in damages for such conversion.

3. COMPLAINT—*Demurrer—Defects—Waiver—Pleadings.*

Where advantage is not taken of the defects in a statement of a cause of action by demurrer, such right of defense is deemed to have been waived.

ACTION by P. F. Cook, trustee of Andrew Brown, a bankrupt, against the American Exchange Bank and others, heard by Judge *Thos. A. McNeill,* at Fall Term, 1900, of the Superior Court of DARE County.

On the 23d day of February, 1900, the plaintiff sued out a summons in the Superior Court of Dare County against the defendants, and delivered it to the Sheriff of that county, who returned it not served because the defendants could not be found in his county. Plaintiff also applied for and obtained an order of attachment against defendants' property. Upon the return of the summons not served, plaintiff undertook to have the service made by publication, and did cause a publication to be made, citing defendants to appear at the Spring Term (May 7) of the Court, and during the first three days of the term filed his complaint, duly verified. But

no appearance was made by defendants during the term, which continued only one week and then expired by limitation of law. Afterwards, to-wit, on the 21st day of May, the defendants, through their counsel, requested and obtained from plaintiff's counsel a stipulation as follows: "It is hereby stipulated that the defendants' time is extended to and including May 31, 1900, to take any action that they or either of them might have taken in the above-entitled action on or prior to May 5, 1900." And subsequently, on the 29th of May, they filed a petition and bond for removal of the action to the United States Circuit Court, which was, however, remanded for reasons not material to be here stated. At the Fall Term of Court, plaintiff moved for judgment by default and inquiry for want of an answer, which was resisted by defendants upon the ground that they had never been served with process and had never voluntarily appeared. Motion for judgment denied by his Honor, and plaintiff appealed.

*E. F. Aydlett*, and *F. H. Busbee,* for the plaintiff.
*Busbee & Busbee,* for the defendants.

COOK, J. The above statement of the case recites all the facts material to aid us in determining the contention between the parties as presented by the record upon appeal.

And in this Court defendants further insisted that if the Court should hold that they were properly in Court, by service or otherwise, the plaintiff could not recover judgment against them for that the complaint did not state facts sufficient to constitute a cause of action, and moved to dismiss the action.

As to the question raised in the record upon appeal, plaintiff contends that he is entitled to a judgment by default and inquiry for want of an answer, while defendants contend

that they are not within the jurisdiction of the Court for want of service of process, and have not waived such service by voluntarily appearing.

The term of the Court to which the summons was returnable began on May 7 and continued only one week. After the filing of his complaint, it became incumbent upon defendants, if they had been legally served with process, to answer or demur to the complaint during that term, or to file their petition for removal to the United States Circuit Court before the time of answering or demurring expired, which was during that term. But no action or appearance whatsoever was taken or entered by defendants, and the term expired; whereby they were deprived of all rights thereafter to plead to the action or remove the cause. And if defendants had not been legally served, no harm could befall them by paying no attention to the proceedings. But defendants chose a different course, and desired to remove the action to the United States Circuit Court, which they had no legal right to do; the term had expired and the door was closed against them. So they sought and obtained the consent of the plaintiff, set out in the stipulation, and were, by agreement, relegated to their original rights, and also obtained the further indulgence of time, which was extended, by consent, to and including May 31. By thus recognizing the action and treating with plaintiff's attorneys concerning the remedies and rights existing under it, and obtaining a standing in Court (which they once could have exercised, but had lost) which would again enable them to assert or exercise their rights, and thereafter exercising such, the action of defendants became *ipso facto* a voluntary appearance, and waived any irregularity or lack of service which may have theretofore existed. Had they not been made parties by service before, they could not at that time come in and obtain the privileges sought except by consent, and it is clear that

they could not stay out and exercise rights and privileges which belonged only to parties to the action.

In *Bayzo v. Wallace,* 16 Nev., 290, defendant's attorney had filed a special appearance for the purpose of making a motion to dismiss, and on the next day entered into a stipulation as to the continuance of the main action, viz: "It is hereby stipulated and agreed by and between the parties in the above-entitled cause that said cause be continued until February 20, 1884"; and the Court there held that his agreeing to the continuance of the action was a general appearance.

In this case, by the stipulation, defendants not only obtained a postponement of the time in which they were required by statute to file their petition, but actually acquired the *right* to do so. And further, they obtained the right to defend the action, which they had lost; and still further, to take any action they may have taken on or before the first day of the May Term. So, having been let into Court for all purposes, it is clear to us that one of their capacities must necessarily have been that of a party to the action for concluding the contentions involved.

Finding the parties before the Court with nothing except the verified complaint, upon which motion was made for judgment by default and inquiry, we think his Honor erred in not granting judgment accordingly, unless the motion to dismiss, made in this Court by defendants, can be sustained.

The complaint shows that the title to the land was held by a trustee to secure certain securities held by defendants, for which the assignor of plaintiff (Brown) was liable; and that Brown, under an agreement, had the right to sell the pine timber upon the land, alleged to be worth $200,000, and apply the proceeds of sale in payment upon his said liability. It alleges "that defendants herein have allowed the Alligator Lumber Company * * * and other parties to go upon said premises and cut a large quantity of the valuable pine tim-

ber upon said lands, which is worth $25,000, or some other large sum, all of which should be applied to the payment of said indebtedness of Anderson Brown, referred to in the mortgage of Warren, Trustee, to Chard, Trustee." And in his prayer for judgment (among other reliefs) prays judgment "for the value of the timber which was permitted to be cut by defendants upon said lands, amounting to upwards of $25,000, and for costs."

We find some difficulty in determining whether it is a defective statement of a cause of action, which should have been taken advantage of by demurrer, or a statement of a defective cause of action, for which a motion to dismiss will be sustained in this Court. Clark's Code, sec. 242, and cases there cited. But we are of opinion that it is the former rather than the latter. Under their said agreement, Brown had the right to sell the pine timber and apply the proceeds in extinguishing his indebtedness. It does not appear that the trustee or defendants had any right to control or dispose of the pine timber. They had the right of possession of the land, and it inferentially appears that they had the actual possession, but the disposition of the pine timber belonged to Brown. It is not alleged that Brown was hindered in the exercise of his rights over the timber, but as the right of possession and also the actual possession of the land were vested in the trustee for the benefit of defendants, and it appearing that they allowed and permitted parties to cut a large quantity of said timber of great value, by which permission they became and were parties to the conversion, it follows that they too are liable in damages, and should account for the value of such quantity as was thus cut, and of which Brown was deprived. They having possession of the land, the parties had no right to enter thereon for any purpose except by their permission; and having so entered and trespassed upon Brown's property, the defendants become equally

liable with the trespasser for the damage done. It is true that the trespass is not charged in the complaint, but no advantage is taken of the defects in the statement of the cause by demurrer; so defendants are deemed to have waived such right of defense.

The plaintiff is entitled to judgment by default and inquiry, and his Honor erred in not granting the same.